## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CR 03-00569 JB

MARVIN THOMAS,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Marvin Thomas' Motion and Memorandum of Law for a New Trial, filed May 11, 2004 (Doc. 224). The Court held a hearing on this motion on June 8, 2004. The primary issue is whether Thomas' motion under Crawford v. Washington, 124 S.Ct. 1354 (2004) -- decided 17 days after the jury's guilty verdict -- is timely under Federal Rule of Criminal Procedure 33. Because the Court finds that Thomas' motion is untimely, the Court will deny the motion.

### PROCEDURAL BACKGROUND

Thomas requests that the Court set aside the jury verdict that the Court entered against him on February 20, 2004 and order a new trial pursuant to rule 33. As a basis for his motion, Thomas: (I) asserts that he joins in the motion that Defendant Gene Alan Summers filed on March 18, 2004 to vacate the guilty verdict and dismiss all charges based on newly discovered evidence; and (ii) moves for a new trial based on the Court's evidentiary ruling relating to a question co-defendant, Omar Mohammed, asked while the police arrested him. Thomas requests that the Court accept this motion for a new trial as timely filed under rule 33(b)(1) because newly discovered evidence was

unearthed within three years of the verdict.  Thomas contends that the Court should also address the second basis for a new trial because the probable reversal on appeal of the Court's allegedly erroneous evidentiary ruling is a sufficient basis for granting a new trial and thus would preclude a time consuming and costly appeal.  Thomas contends that, because of the extraordinarily strong likelihood that the United States Court of Appeals for the Tenth Circuit will reverse this Court on appeal, rule 33 should be triggered in the first instance for this Court to correct Thomas' Sixth Amendment constitutional violation without waiting for the Tenth Circuit's vindication.

In support of his first basis for his motion, Thomas represents that he and his counsel were unaware that a witness existed that undermined the United States' theory that Summers was at the bank and acted as a getaway driver.  Mr. Robert Gorence has been Thomas' attorney since December 18, 2003 -- after the Court allowed Thomas' two previous attorneys to withdraw.  Thomas represents that the discovery that the United States provided, coupled with the investigative efforts of Thomas' three attorneys, did not produce the allegedly exculpatory evidence that Summers' motion provides the Court.

With regard to Thomas' second basis for his motion, Mohammed's out-of-court question at the time that the police arrested him was: "How did you guys find us so fast?"  Mohammed's question became an issue during the trial testimony of Detective Daniel Wolf.  Among other things, Wolf testified that he was at the scene where police stopped all four Defendants in the red Ford Escape.  Wolf patted down Mohammed and, during the pat-down, he felt hard items that were cylinder-like in shape.  Thinking that it could be a weapon, Wolf asked Mohammed: "What is this?"  Mohammed replied: "What do you think it is?  It's bank money."  Trial Transcript of Det. Daniel Wolf at 34:21 -

35:1.[1]  The Defendants did not object to this testimony.

Wolf then testified that he left the rolls of coins in Mohammed's pocket and walked him over to the patrol car.  While walking to the patrol car, Mohammed asked: "How did you guys find us so fast?"  See id. at 35:12.

During trial, the Court addressed and then rejected the one hearsay objection that Thomas raised to exclude Mohammed's statement.  The Court was cautious about admitting this testimony.  Before the Court admitted Mohammed's statement, the Court allowed the parties to argue their theories and heard those legal arguments outside of the jury's presence.  Wolf's trial transcript sets forth the arguments and the Court's ruling regarding its admission.

The United States argued that the utterance was a question and consequently not hearsay, or, that if it were hearsay, it comes in under at least two exceptions.[2]  The Court agreed in part and allowed the testimony.  Ultimately, the Court concluded that what Mohammed said was a question, which is not hearsay, and if it was hearsay, it was a present-sense impression.  The Court ruled, and set forth its grounds for the admission of this statement, as follows:

> The Court: I've got to make a ruling so we can get the jury back in.  I'm not convinced it's hearsay, either because it's a question or admission against interest.  I also think it comes in under the present-sense exception.  I looked at a Fifth Circuit case during the lunch hour, that 23 minutes – the substantial contemporaneous requirement was satisfied even though there had been a time lapse.  I think he was describing the event.  Also, I found a Tenth Circuit case that a statement made by

---

[1] The Court's citations to trial transcripts refer to finalized excerpts, prepared at the parties' requests, and not to the completed transcript of the entire trial, which is not yet final.

[2] The parties dispute whether Thomas could have called Mohammed as a witness to cross examine him regarding his question.  The United States asserts that Thomas could have called Mohammed to testify and that he was thus available.  See Transcript of Hearing at 44:12-16 (June 8, 2004)(this citation is to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.).

driver of truck, which had been found carrying marijuana, which – to the co-driver, which were recorded by a device in the back of a patrol car and in which both men had been placed following their arrest – were properly admitted.  Under the co-conspirator exception, there they had not received their Miranda warnings.  So I guess I'm – the Court seemed to be making a little bit of a distinction there.  So I'm not sure that one is applicable either given that – you know, you may have had an arrest, but you haven't had any Miranda warnings at that point.  Bu[t] anyway, I think it's – I'm not sure – I'm not convinced it's hearsay.  And even if it is, I think it comes under the exception for present-sense exception.

Id. at 31:20 - 32:17.

When the United States offered co-defendant Omar Mohammed's post-arrest statement without calling Mohammed as a witness, Gorence objected to the introduction of the statement. While Thomas now states that he objected on the grounds that it violated his right to confront witnesses against him, the record shows that Thomas said that he could not cross-examine the declarant and then only in the context of an argument that what Mohammed said to Wolf amounted to inadmissible hearsay during a hearsay exception argument.  See id. at 29:17-22; id. at 30:17-20. After the Court concluded that it could not admit Mohammed's post-arrest declaration to the police as a co-conspirator statement, the Court allowed the question as non-hearsay or, alternatively, the statement as an excited utterance exception to the hearsay rule.

Summers filed a motion for new trial on March 18, 2004.  See Defendant Gene Alan Summers' Motion and Memorandum to Vacate Guilty Verdict and Dismiss Charges Based on the Prosecution's Withholding of Exculpatory Evidence, filed March 18, 2004 (Doc. 209).  The Court held a hearing on Summers' motions on Monday, May 3, 2004 at 9:00 a.m.  The Court provided notice of the hearing on March 19, 2004, seven weeks earlier than Thomas filed his motion.  Thus, Thomas had almost two months to join Summers' motion and did not do so.

During the three and one-half hour evidentiary hearing on Summers' motion, the Court found

that there was sufficient evidence in the record to support the jury's guilty verdict.  <u>See</u> Order ¶ 3, at 6 (filed May 10, 2004)(Doc. 220).  The United States called three witnesses and Summers called two witnesses.  Additionally, the Court held that: (I) the United States did not violate its obligation to disclose evidence to Summers under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); (ii) Summers had not established by a preponderance of the evidence that the trial's outcome would have been different had Lyle Campbell testified; and (iii) a new trial was not warranted or necessary.  <u>See</u> Order ¶¶ 2-4, at 2 (Doc. 220).  After the hearing, the Court filed written orders setting forth the basis for the Court's oral rulings at the hearing: (I) a Memorandum Opinion and Order, filed May 10, 2004 (Doc. 219), denying Summers' Rule 29 Motion; and (ii) an Order denying Summers' Motion and Memorandum to Vacate Guilty Verdict, filed May 10, 2004 (Doc. 220).  Thomas filed this motion on May 11, 2004, the day after the Court filed its written orders on Summers' motion.

## <u>LAW ON MOTIONS FOR A NEW TRIAL</u>

The Federal Criminal Rules provide: "A party must serve a written motion – other than one that the court may hear ex parte – and any hearing notice at least 5 days before the hearing date, unless a rule or court order sets a different period."  Fed. R. Crim. P. 47(c)).  On a defendant's motion, a Court may grant a new trial "if the interests of justice so requires."  Fed. R. Crim. P. 33. The defendant has the burden of justifying a new trial.  <u>See</u> <u>United States v. Geders</u>, 625 F.2d 31, 33 (5th Cir. 1980).

Rule 33(b) sets forth two grounds for a new trial.  Subsection (b)(1) provides, in pertinent part: "Newly Discovered Evidence.  Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1). Subsection (b)(2) provides, in pertinent part: "Other Grounds.  Any motion for a new trial ground

on any reason other than newly discovered evidence must be filed within 7 days after the verdict or

finding of guilty." Fed. R. Crim. P. 33(b)(2).  A defendant must request any extension of time within

the seven-day time period.  See Fed. R. Crim. P. 45.

The seven-day time period is jurisdictional; a court may not entertain a motion for a new trial

filed beyond seven days unless it is based on newly discovered evidence.  See United States v.

Higgins, 282 F.3d 1261, 1278 (10th Cir. 2002)("Here, the motion to reconsider clearly was far

outside the seven day period provided for motions for a new trial, and so the trial court had no

jurisdiction to consider the motion absent a showing of newly discovered evidence."); United States

v. Koehler, 24 F.3d 867, 869 (6th Cir. 1994).  The parties have not identified, and the Court has not

found, a case from the Tenth Circuit, or from any of the District Courts within the Tenth Circuit,

where the court allowed a motion for new trial not based on newly discovered evidence to be filed

more than seven days after a jury's verdict.  Indeed, the Tenth Circuit's language has suggested

otherwise:

> Rule 33 clearly states that a motion for new trial not based on newly discovered
> evidence must be filed within seven days after a jury's verdict.  Fed. R. Crim. P. 33.
> Because these two motions were filed some two months after the jury's verdict, we
> agree with the district court that they were not timely under Rule 33.

United States v. Haddock, 956 F.2d 1534, 1544 (10th Cir. 1992), abrogated on other grounds by

United States v. Wells, 519 U.S. 482, 490-91 (1997).

Courts have been reluctant to create exceptions to rule 33's plain language.  In United States

v. Hall, 214 F.3d 175 (D.C. Cir. 2000), the defendant filed a timely motion for an extension of time

to file a motion for a new trial, but the trial court neglected to rule on the motion within the

prescribed period.  See id. at 176.  Weeks later, the court granted the motion nunc pro tunc to a date

within seven days of the verdict.  The United States Court of Appeals for the District of Columbia found that the district court had impermissibly acted outside of rule 33's time limits and, therefore, lacked the power to act.  See id. at 176-78.  The D.C. Circuit held that rule 33 is unambiguous and that its limits are jurisdictional.  See id. at 178-79.  The D.C. Circuit noted that, in Carlisle v. United States, 517 U.S. 416 (1996), the Supreme Court of the United States had allowed that a failure to meet a time limit might be excused in the "unique circumstances" when the reason for the failure was an "erroneous ruling or assurance by the District Court itself."  214 F.3d at 177 (quoting Carlisle v. United States, 517 U.S. at 428).

In United States v. Marquez, 291 F.3d 23 (D.C. Cir. 2002), the D.C. Circuit again revisited the scope of what it called "the strict time limit for filing a motion for a new trial under Federal Rule of Criminal Procedure 33 . . . ."  The Court of Appeals stated:

> As we explained in Hall, Rule 33 means what it says.  See 214 F.3d at 178.  Nor does this case fall within the narrow exception for "unique circumstances" that could excuse the failure to comply with the rule.  Such circumstances exist only when the cause of the failure to meet the deadline was "an erroneous ruling or assurance by the District Court itself."  Carlisle v. United States, 517 U.S. 416, 428 . . . (1996).

United States v. Marquez, 291 F.3d at 26.

The facts of United States v. Marquez are instructive.  The jury delivered the verdict on May 3, 2000.  Immediately afterwards, the trial judge indicated a substantial likelihood that he would grant a motion for a new trial in Marquez' case.  The next day, the judge spoke with Marquez' trial counsel and recommended that Marquez file a motion for a new trial based on ineffective assistance of counsel.  On May 8, 2000, trial counsel filed a motion for extension of time to file motion for a new trial and a request for appointment of co-counsel.  Two days later, she filed an Amended Motion for Extension of Time.  The District Court failed to rule on these motions within seven days of the

verdict.  The District Court nonetheless thought the "unique circumstances" exception in <u>United States v. Hall</u> applied to this case.

The D.C. Circuit applied the time limits that rule 33 prescribes and, in doing so, discussed the limitations on the district court: "According to the clear language of Rule 33, the District Court forfeited the power to act when it failed to grant a new trial or fix a new time for filing a motion for a new trial within seven days of the verdict."  <u>United States v. Marquez</u>, 291 F.3d at 27.  The D.C. Circuit stated:

> District Court judges now know, beyond a shadow of a doubt, that they must act within the seven-day period to preserve jurisdiction over an anticipated motion for new trial.  Moreover, Rule 33 does not unduly burden District Court judges, even with their concededly full dockets and busy schedules.  While the rule's time limits are strict, the rule affords judges great flexibility to set a new date that will give the parties adequate time to make a well-supported motion for a new trial.

<u>Id.</u> at 27-28.  The Court also addressed the "unique circumstances" doctrine:

> The exception is limited to cases in which a party misses a deadline because he has been misled by a ruling or an order of the court containing assurances that the deadline has been extended.  <u>See</u> <u>Moore v. S.C. Labor Bd.</u>, 100 F.3d 162 (D.C. Cir. 1996)(per curiam).  In this case, the parties were not misled by the trial court.  On the contrary, the trial judge expressly warned the parties about the limits of Rule 33. Where, as here, the court does not affirmatively issue a ruling or order misleading the parties, the unique circumstances doctrine has no application.

291 F.3d at 28.

In <u>United States v. Salerno</u>, 505 U.S. 317 (1992), the Supreme Court of the United States applied the plain language rule to the Federal Rules of Evidence: "Congress thus presumably made a careful judgment as to what hearsay may come into evidence and what may not.  To respect its determination, we must enforce the words that it enacted."  <u>Id.</u> at 322.  The Supreme Court cautioned district courts not to depart from the Rules of Evidence or to ignore its language.

A new trial based on a claim of newly discovered evidence must meet a five part test: (i) the evidence was discovered after trial; (ii) the defense's lack of diligence did not cause the failure to learn of the evidence; (iii) the new evidence is not merely impeaching; (iv) the new evidence is material to the principal issues involved; and (v) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. See United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997). A motion for a new trial based on newly discovered evidence "is not regarded with favor and should only be granted with great caution." Id.

In United States v. Stiner, 765 F. Supp. 663 (D. Kan. 1991), the Honorable G. Thomas Van Bebber, United States District Judge, wrote:

> In considering a motion for new trial, we have broad discretion which will not be disturbed on appeal absent plain abuse of that discretion. United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987). The standards for granting a new trial are not as strict as the standards for granting judgment of acquittal. Fed. R. Crim. P. 33 provides that a court may grant a new trial "if required in the interest of justice." Additionally, any error which would require reversal on appeal is a sufficient basis for granting a new trial. 3 C. Wright, Federal Practice and Procedure: Criminal § 556 (2d ed. 1982).

765 F. Supp. at 664. The jurisdictional time limits that rule 33 imposes, however, still apply in the context of the "interest of justice" standard. See Conley v. United States, 323 F.3d 7, 10 (1st Cir. 2003)("Under Rule 33, a new trial 'in the interests of justice' may be granted liberally on a motion made 'within 7 days' after the verdict; but thereafter, it can be granted solely for newly-discovered evidence (and then only on a motion made within three years).").

## LAW ON HEARSAY AND THE CONFRONTATION CLAUSE

### 1.    Whether Mohammed's Question is Non-Hearsay or Admissible Hearsay

This Court, over Thomas' objection, allowed in Mohammed's question at trial, holding that,

as a question, it did not constitute inadmissible hearsay and, even if it were construed as a hearsay

statement, it fell within an exception to the hearsay rule.  In United States v. Jackson, 88 F.3d 845

(10th Cir. 1996), a criminal case, the United States Court of Appeals for the Tenth Circuit reasoned:

> The mere fact . . . that the declarant conveyed a message with her question does not
> make the question hearsay.  See United States v. Long, 905 F.2d 1572, 1580 (D.C.
> Cir. 1990), cert. denied, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).  As
> the D.C. Circuit pointed out in Long, "[i]t is difficult to imagine any question . . . that
> does not in some way convey an implicit message."  Id.  Rather, the important
> question is whether an assertion was intended.  Id.  We find it hard to believe in this
> case that the declarant intended to assert that Mr. Jackson was in possession of the
> pager and that he was responding to her call.  If any doubt remains, we believe it is
> resolved by the fact that Rule 801 places "the burden upon the party claiming that the
> intention [to make an assertion] existed; ambiguous and doubtful cases will be
> resolved against him and in favor of admissibility."  Fed.R.Evid. 801 advisory
> committee's note.  Mr. Jackson has not met this burden.  We hold that the district
> court did not err when it overruled Mr. Jackson's hearsay objection.

United States v. Jackson, 88 F.3d at 848.  See also United States v. Lewis, 902 F.2d 1176, (5th Cir.

1990)("While 'assertion' is not defined in the rule, the term has the connotation of a positive

declaration.  See Websters New Collegiate Dictionary 109 (1985 ed.)  The questions asked by the

unknown caller, like most questions and inquiries, are not hearsay because they do not, and were not

intended to, assert anything.").  See also 4 Salzburg, Federal Rules of Evidence Manual at 801-21 -

801-25 (8th ed. 2002)(indicating that a court should look to whether the declarant intended to make

an assertion).

## 2.     Preservation of Objection

An appellant must lodge an objection premised on a violation of his Sixth Amendment right

to confrontation to preserve the issue for constitutional harmless error review.   "Where a

Confrontation Clause objection is not explicitly made below, we will not address the constitutional

issue in the absence of a conclusion that it was plain error for the district court to fail to raise the

constitutional issue sua sponte." United States v. Lott, 310 F.3d 1231, 1241 n.6 (10th Cir. 2002)(quoting United States v. Lahue, 261 F.3d 993, 1009 (10th Cir. 2001); United States v. Perez, 989 F.2d 1574, 1582 (10th Cir. 1993)(en banc)(same).

### 3.      Crawford v. Washington

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . .  to be confronted with the witnesses against him."  Before the Supreme Court's recent decision in Crawford v. Washington, 124 S.Ct. 1354 (March 8, 2004), the law in the Tenth Circuit established:

> [T]he hearsay rules and the confrontation clause stem from the same roots and are designed to protect similar values; and hence statements found to be admissible under the rules of evidence are also *per se* unobjectionable under the confrontation clause. No additional analysis is required to hold that the challenged statement is in conformity with the Sixth Amendment once we have determined, as has been done hereinabove, that it is not excludable as hearsay under the rules of evidence.

United States v. Morales-Macias, 855 F.2d 693, 695-96 (10th Cir. 1988).

In Crawford v. Washington, decided post-trial, a state court in Washington tried the petitioner for assault and murder.  The state sought to introduce a recorded statement that the petitioner's wife had made during a police interrogation as evidence that the stabbing was not in self-defense.  The wife did not testify at trial because of Washington's marital privilege.  In Washington, this privilege does not extend to a spouse's out-of-court statements admissible under a hearsay exception.  Noting that the wife had admitted she led petitioner to the victim's apartment and thus had facilitated the assault, the State invoked the hearsay exception for statements against penal interest.

The petitioner in Crawford v. Washington argued that admitting the evidence would violate his Sixth Amendment right to be "confronted with the witnesses against him."  Under Ohio v.

Roberts, 448 U.S. 56 (1980), that right does not bar admission of an unavailable witness' statement against a criminal defendant if the statement bears "adequate 'indicia of reliability,'" a test met when the evidence falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." Id. at 66.

The Crawford trial court admitted the statement on the latter ground.  At his trial, the State played for the jury the wife's tape-recorded statement to the police describing the stabbing; the petitioner had no opportunity for cross-examination.  The prosecution played the tape for the jury and relied on it in closing, arguing that it was "damning evidence" that "completely refutes [petitioner's] claim of self-defense."

The Washington Court of Appeals reversed, finding the wife's statement unreliable.  The Court of Appeals also stated that the confrontation violation was not harmless.

The Washington Supreme Court, however, upheld the conviction, deeming the statement reliable because it was nearly identical, i.e., interlocked with, petitioner's own statement to the police, in that both were ambiguous whether the victim had drawn a weapon before the petitioner assaulted him.  The Washington Supreme Court unanimously concluded, however, that the wife's statement did not fall under a firmly rooted hearsay exception.  The Washington Supreme Court expressed no opinion whether the alleged violation was harmless.

The Supreme Court of the United States  in Crawford v. Washington held that the State's use of the wife's statement violated the Confrontation Clause because, where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. See id. at 1359-74. The Supreme Court further recognized that the confrontation clause "applies to 'witnesses' against the accused – in other words, those who 'bear testimony.'" Id. at 1364. The

-12-

Supreme Court opined: "statements that were made under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial. . . . Regardless of the precise articulation, some statements qualify under any definition – for example ex parte testimony at a preliminary hearing." Id. at 1364.

In his historically sweeping opinion for the Supreme Court documenting the perils of allowing such testimony, Justice Scalia first noted that the Confrontation Clause's text did not alone resolve the case. Justice Scalia stated that one could plausibly read "witnesses against" a defendant to mean those who actually testified at trial, those whose statements are offered at trial, or something in-between. Hence, the Court turned to the Clause's historical background.

Despite the common-law tradition as one of live testimony in court subject to adversarial testing, England at times adopted elements of the civil-law practice. Government officials would examine suspects and witnesses before trial, and sometimes read in these examinations in court in lieu of live testimony. Pretrial examinations became routine under two statutes passed during Queen Mary's reign in the 16th century. The most notorious instance of civil-law examination occurred in the great political trial of Sir Walter Raleigh in 1603.

To prevent these abuses, the English courts developed relatively strict rules of unavailability, admitting examinations only if the witness was demonstrably unable to testify in person. One recurring question was whether the admissibility of an unavailable witness' pretrial examination depended on whether the defendant had had an opportunity to cross-examine him. The English courts answered this question in the affirmative. See, e.g. King v. Paine, 5 Mod. 163, 165, 87 Eng. Rep. 584, 584 (ruling that, even though a witness was dead, his examination was not admissible, where "the defendant not being present when [it was] taken before the mayor . . . had lost the benefit

of a cross-examination."); Fenwick's Case, 13 How. St. Tr. 537, 591-592 (H.C. 1696)(Shower)(allowing examination of a witness who had been spirited away, but one judge stated that "no deposition of a person can be read, though beyond sea, unless in cases where the party it is to be read against was privy to the examination . . . .").

The Colonies also used controversial examination practices. The Governor of Virginia privately issued several commissions to examine witnesses against particular men ex parte. England gave jurisdiction over Stamp Act offenses to the admiralty courts, which followed civil-law rather than common-law procedures and thus routinely took testimony by deposition or private judicial examination.

Many declarations of rights adopted around the time of the Revolution guaranteed a right of confrontation. The proposed Federal Constitution, however, did not. Critics objected to this omission precisely on the ground that it would lead to civil-law practices and the use of "written evidence." The First Congress responded by including the Confrontation Clause in the proposal that became the Sixth Amendment. Early state decisions focused on whether depositions could be read against an accused if they were taken in his presence.

That history supports two principles. First, the principal evil at which the Clause was directed was the civil-law mode of criminal procedure, and particularly the use ex parte examinations as evidence against the accused. The Supreme Court in Crawford v. Washington cautioned that the Sixth Amendment must be interpreted with this focus in mind. The Clause's primary object is testimonial hearsay, and interrogations by law enforcement officers fall squarely within that class.

The Supreme Court recognized that the Confrontation Clause applies to out-of-court statements as well as in-court testimony and rejected the view that its application to out-of-court

statements introduced at trial depends upon "'the law of Evidence for the time being.'"  Crawford

v. Washington, 124 S.Ct. at 1364.  The Supreme Court stated that leaving the regulation of out-of-

court statements to the law of evidence would render the Confrontation Clause powerless to prevent

even the most flagrant inquisitorial practices.

> This focus also suggests that not all hearsay implicates the Sixth Amendment's core concerns.  An off-hand, over-heard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted.  On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.

Id.  The Supreme Court then fleshed out what testimonial statements are and, to some degree, what

they are not:

> The text of the Confrontation Clause . . . applies to "witnesses" against the accused–in other words, those who "bear testimony." . . .  "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." . . .  An accuser who makes a formal statement to the government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. . . .
>
> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be use prosecutoril[y]" . . .; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confession[s]" . . . ; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ."  Regardless of the precise articulation, some statements qualify under any definition – for example, ex parte testimony at a preliminary hearing.

Id.  The Supreme Court then specifically addressed police interrogations: "Statements taken by police

officers in the course of interrogations are also testimonial under even a narrow standard."  Id.

> Police interrogations do not generally produce sworn testimony, but the Supreme Court stated

that the absence of oath was not dispositive.  Chief Justice Rehnquist disagreed in an opinion concurring in the judgment, asserting that the right of confrontation was not particularly concerned with unsworn testimonial statements.  Justice Scalia, and the majority of the Supreme Court, found "it implausible that a provision which concededly condemned trial by sworn ex parte affidavit thought trial by unsworn ex parte affidavit perfectly OK."  Id. at 1365 n.3.  The Supreme Court stated that the involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace.  See id. at 1365.

The Supreme Court summed up the first principle by stating that, even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class.  The Supreme Court stated that it used the term "interrogation" in its colloquial, rather than any technical legal, sense, and noted that, just as various definitions of "testimonial" exist, one can imagine various definitions of "interrogation."  Justice Scalia stated that the wife's recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition.  See id. at 1365 n. 4.

The Supreme Court found that the historical record also supports a second proposition: the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had enjoyed a prior opportunity for cross-examination.  English authorities and early state cases indicate that this was the common law at the time of the founding.  And the "right . . . to be confronted with the witnesses against him," Sixth Amendment, is most naturally read as a reference to the common-law right of confrontation, admitting only those exceptions established at the time of the founding.  See id. at 1363-67; Mattox v. United States, 156 U.S. 237, 243 (1895).

-16-

The majority agreed with the Chief Justice that there were always exceptions to the general rule of exclusion of hearsay evidence.   Justice Scalia concluded, however, that "there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case."  Crawford v. Washington, 124 S.Ct. at 1367 (emphasis in original).  Justice Scalia stated that most of the hearsay exceptions covered statements that by their nature were not testimonial, citing, for example, business records or statements in furtherance of a conspiracy.  See id.

Justice Scalia noted that there was one large exception to his historical finding that no exceptions were invoked to admit testimonial statements against the accused in a criminal case.  The one deviation involves dying declarations.  See id. at 1367 n.6.  Justice Scalia noted that, although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are.  See id.  The Supreme Court stated that it need not decide in Crawford v. Washington whether the Sixth Amendment incorporates an exception for testimonial dying declarations.  See id. The Supreme Court stated that, if this exception must be accepted on historical grounds, it is sui generis.  See id.  The majority rejected the Chief Justice's contention that the fact a statement might be testimonial does nothing to undermine the wisdom of these hearsay exceptions.  The majority stated:  "Involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace."  Id. at 1365.

Justice Scalia stated that the Supreme Court's decisions have generally remained faithful to the Confrontation Clause's original meaning.  See id. at 1367-69; Mattox v. United States, supra. The Supreme Court could not, however, say the same of the rationales of its more recent decisions. See, e.g., Ohio v. Roberts, 448 U.S. at 66.  Justice Scalia said that the test in Ohio v. Roberts departs

from historical principles because it admits statement consisting of ex parte testimony upon a mere reliability finding.  See Crawford v. Washington, 124 S.Ct. at 1369.  The Confrontation Clause commands the reliability be assessed in a particular manner: by testing in the crucible of cross-examination.  See id. at 1370-71.

Justice Scalia stated that Ohio v. Roberts allows a jury to hear evidence, untested by the adversary process, based on a judicial determination of reliability, thus replacing the constitutionally prescribed method of assessing reliability with a  foreign one.  See id. at 1370.  Justice Scalia found the Roberts' framework unpredictable.  Whether a statement is deemed reliable depends on which factors a judge considers and how much weight he accords each of them.  The vice of the Roberts test according to Justice Scalia, was its capacity to admit core testimonial statements that the Confrontation Clause meant to exclude.  See Crawford v. Washington, 124 S.Ct. at 1371.

The case before the Supreme Court in Crawford v. Washington was a demonstration of Roberts' unpredictable and inconsistent application.  It also revealed Roberts' failure to interpret the Constitution in a way that secured its intended constraint on judicial discretion.  The Supreme Court stated that the Constitution prescribes the procedure for determining the reliability of testimony in criminal trials, and it, no less than the state courts, lacks authority to replace it with one of its own devising.  See id. at 1372-74.

"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law -- as does [Ohio v.] Roberts, and as would an approval that exempted such statements from Confrontation Clause scrutiny altogether." Id. At 1374. The Supreme Court emphasized that "[w]here testimonal evidence is at issue, however, the Sixth Amendment demands what the common law required; unavailability and a prior opportunity

for cross-examination." Id. at 1374. The Supreme Court in Crawford v. Washington specifically

overruled Ohio v. Roberts, 448 U.S. 56 (1980), the case which provided the support for Martinez

v. Sullivan, 881 F.2d 921 (10th Cir. 1989) – one of the cases that the United States relied on at trial

to support the admission of Mohammed's post-arrest question. See 881 F.2d at 928.

## LEGAL ANALYSIS

As noted above, Thomas asserts two independent grounds as the basis of his motion. First,

Thomas joins in the motion to vacate the guilty verdict and dismiss all charges that co-defendant

Summers filed on March 18, 2004. Second, Thomas moves for a new trial based on the Court's

allegedly clearly erroneous evidentiary ruling at trial with regard to the admission of Mohammed's

post-arrest question.

## I.   THE COURT WILL DENY PORTIONS OF THOMAS' MOTION AS UNTIMELY AND BECAUSE THE COURT HAS ALREADY CONSIDERED THE ARGUMENTS.

As his first ground for a request for a new trial, Thomas joins with co-defendant Summers'

motion for a new trial with regard to newly discovered evidence. Thomas argues that, even with due

diligence, he and his three lawyers could not have found this allegedly exculpatory evidence. Thomas

joins in Summers' motion and requests a new trial.

### A.   THOMAS' JOINDER OF CO-DEFENDANT SUMMERS' MOTION FOR A NEW TRIAL WITH REGARD TO NEWLY DISCOVERED EVIDENCE IS UNTIMELY.

Procedurally, Thomas' motion relying on Summers' motion is not timely. The Court had

already denied Summers' motion before Thomas filed a motion joining Summers' motion. The Court

would be on solid grounds denying Thomas' motion without a hearing. He did not properly join the

co-defendant's motion. While the Court may properly deny the motion without consideration of its

merits, the Court will also review the merits.

**B.    EVEN IF THOMAS' JOINDER IN SUMMERS' MOTION WERE TIMELY, THE COURT WOULD STILL DENY THIS PORTION OF THE MOTION ON ITS MERITS.**

Pursuant to District of New Mexico Local Criminal Rule 16.3,[3] the United States requests that the Court, in addition to its response, consider and incorporate by reference into its response, the Government's Response to Gene Summers' Motion for Rule 29 Judgment of Acquittal, which the United States filed on March 11, 2004 (Doc. 207), and the Government's Response to Defendant Summers' Motion and Memorandum of Law to Vacate Guilty Verdict and Dismiss Charges Based on the Prosecution's Withholding of Exculpatory Evidence, which the United States filed on April 16, 2004 (Doc. 215).  The United States further requests the Court to consider all of the arguments made on the record at the hearing on May 3, 2004, during the hearing in co-defendant Summers' rule 29 and Brady motions.

Even if the Court were to assume that Thomas' motion joining Summers' motion is not time barred, it is difficult to see how Summers' motion is relevant to Thomas.  Summers' motion regarding newly discovered and potentially exculpatory evidence involved the discovery of a witness who allegedly called into question the United States' theory that Summers drove the getaway car.  Neither party has asserted that the witness had testimony relating to the United States' theory regarding Thomas' involvement in this case, and the Court does not see any such relevance based on the testimony the witness provided at the hearing on Summers' motion.  That witness did not provide

---

[3]D.N.M. Local Criminal Rule 16.3, adopts by reference D.N.M. Local Civil Rule 7.1, which provides: "A party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper."  D.N.M. LR-Cv. 7.1.

testimony to the Court at the hearing on Summers' motion that could be arguably exculpatory with

regard to Thomas, and Thomas did not offer any such testimony at the hearing on his motion.  At the

hearing on this motion, counsel for Thomas conceded that Summers' motion regarding newly

discovered evidence was stronger as to Summers than it would be as to Thomas:

> THE COURT: . . . do you agree that as far as Summers is concerned, his motion on newly discovered evidence was probably stronger than Thomas, given the witness that was the subject of the motion?
>
> MR. GORENCE: I do, Your Honor.  I think the Government's theory was that it was defendant Summers in a getaway car.  They didn't posit the theory that it was really Mr. Thomas. . . .  So, arguably, it was stronger for defendant Summers.
>
> * * * *
>
> But I understand the Court's ruling previously.  I don't anticipate arguing that at this hearing today, and I really want to focus on what I consider to be the far stronger position of our motion anyway under Crawford, Your Honor.

Partial Transcript of Hearing at 2:6-17, 2:23 - 3:1 (June 8, 2004).

Furthermore, the Court has already rejected Summers' assertion that this witness' testimony

required the Court to vacate the guilty verdict and either dismiss the charges or order a new trial.  See

Order ¶ ¶ 2-4, at 2 (Doc. 220).  Thus, even if the Court were to entertain the merits of Thomas'

motion joining Summers' motion, the Court would arrive at the same ruling with respect to Thomas.

## II.    BECAUSE THOMAS FILED HIS MOTION IN EXCESS OF SEVEN DAYS AFTER THOMAS' GUILTY VERDICT, NEWLY DISCOVERED EVIDENCE IS THE ONLY VALID BASIS FOR HIS MOTION.

The other argument that Thomas makes is that the allegedly clearly erroneous admission of

co-defendant Mohammed's post-arrest question violated his right to confront all witnesses against

him.   Thomas bases this argument on  the recent Supreme Court decision in Crawford v.

-21-

Washington.[4]

### A.   MOTIONS PURSUANT TO RULE 33 FILED MORE THAN SEVEN DAYS AFTER THE JURY'S VERDICT MUST BE BASED ON NEWLY DISCOVERED EVIDENCE.

As discussed above, the plain language of rule 33 mandates that a motion for new trial brought more than seven days after the verdict must be brought solely because of newly discovered evidence -- a motion on any other grounds must be brought within rule 33's seven day post-verdict window.  See Fed. R. Crim. P. 33(b).  The Tenth Circuit has delineated a five part test for newly discovered evidence:

> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by [the Defendant's] own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

United States v. Quintanilla, 193 F.3d 1139, 1147 (10th Cir. 1999). Nothing in this test suggests that "newly discovered evidence" under rule 33 includes newly decided Supreme Court cases, and Thomas has not presented any cases that would support such an argument.[5]  Thomas' contention that Crawford v. Washington requires the Court to find its evidentiary ruling was clearly erroneous does

---

[4] The United States argues that Thomas did not clearly preserve his objection under the Confrontation Clause.  The United States contends that neither the United States nor the Court can be held responsible for failing to divine an additional Confrontation Clause argument that Thomas did not clearly raise.  The United States argues that Thomas now seeks retroactive assistance for an objection he did not make at trial.  Because resolution of this preservation issue is not necessary to the Court's ruling that Thomas' motion is untimely under rule 33, the Court need not address the preservation issue.  To the extent that Thomas' argument is relevant to the Court's alternative holding that its evidentiary rulings do not constitute clear error, the Court will assume for the purposes of this opinion, without deciding, that Thomas preserved any Confrontation Clause objections.

[5] It does not appear from the briefs or the hearing on this motion that Thomas contends the Crawford v. Washington decision constitutes newly discovered evidence.

not fall under the category of newly discovered evidence.  The Court thus cannot consider the argument.

**B.     THE COURT DOES NOT BELIEVE THAT IT'S EVIDENTIARY RULING WAS SO CLEARLY ERRONEOUS THAT AN EXCEPTION TO RULE 33'S JURISDICTIONAL REQUIREMENTS IS WARRANTED.**

Thomas contends that, under Crawford v. Washington, Mohammed's out-of-court question violated Thomas' Sixth Amendment right to confront a witness who testified against him.  Thomas contends that this Court's ruling allowing the jury to hear Mohammed's question through the testimony of Wolf is clearly erroneous under the holding in Crawford v. Washington and the prejudice was not harmless in what was a highly circumstantial case with regard to the evidence against Thomas.  Thomas contends that Mohammed's statement was particularly pernicious in this case, because the United States placed great emphasis on the pronoun "us" as evidence of conspiratorial complicity.  Thomas asserts that his conviction violates the Sixth Amendment of the United States Constitution, and the Court should, therefore, order a new trial in the interests of judicial efficiency, rather than require Thomas to first address this issue on direct appeal.

The United States argues that the Court properly admitted the question that Mohammed asked.  Because it was a question, it is not hearsay, and the Court properly admitted the question on that basis.  The United States contends that the Court's finding that the statement did not amount to hearsay and, in the alternative, that the question was a present sense impression were correct.  The United States continues to believe that the statement was also admissible  as an exception to the hearsay bar as an excited utterance.  Nonetheless, this issue is a matter that Thomas must address on direct appeal because it is not the subject of a motion for new trial and, as the Court has already found, the motion for a new trial is not timely.

Thomas apparently argues for an exception to the requirements of rule 33 such that the Court should order a new trial outside the seven day window for rule 33 motions other than those based on newly discovered evidence when the Court determines that its evidentiary ruling was so clearly erroneous in light of newly decided Supreme Court law that it would most certainly be rejected by an appellate court.[6]  Even if the Court were inclined to adopt such an exception to rule 33 in the absence of any supporting case law, which it is not, the Court does not believe its ruling was so clearly erroneous that the exception would be warranted in this case.

First, the Court ruled that Mohammed's question did not constitute hearsay, but even if it did, it came under an exception to the hearsay rule.  For Mohammed's question to constitute inadmissible hearsay, the Court would have to find that he intended to assert a message with his statement.  As noted above, it is Thomas' burden to establish this intent.   Thomas has not met his burden to show that the intention to make an assertion existed.  The only possible assertion that Mohammed could have intended to make was an admission of his and his co-conspirators' guilt.  The Court does not believe that it is reasonable to extrapolate that Mohammed intended by his question to assert this message, or any other.  The circumstances and wording of the question indicate to the Court that Mohammed had no intent to express an assertion and merely blurted out a question without contemplating any possible message it might send.  This falls within the Tenth Circuit's rejection of most questions as hearsay.  See United States v. Jackson, 88 F.3d at 848.

_____

[6] The Court notes that it has not yet sentenced Thomas based on his convictions in this case, and the case is not final.  Thus, there are no issues with regard to the retroactive application of the rule announced in Crawford v. Washington.  See Griffith v. Kentucky, 479 U.S. 314, 328 (1987)(noting that new constitutional rules of criminal procedure may not apply retroactively to cases which are final and defining final as "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition of certiorari elapsed or a petition for certiorari finally denied.").

Even if Mohammed intended to assert something by his question and the question is hearsay, the Court ruled that the question would still be admissible as a present sense impression. A present sense impression is: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). The hallmark of the exception is that the statement at issue was made contemporaneous with or shortly after the event that the statement describes. To constitute a present sense impression, the event need not be startling. See Weissenberger, Federal Evidence, 2004 Courtroom Manual at 272-73 (Matthew Bender 2003)("Courtroom Manual").

Mohammed's question occurred immediately following the police officers' apprehension of all four co-conspirators and before the officers had completed the process of taking the four men into custody. See Trial Transcript of Wolf Testimony at 34-35 (describing events surrounding the apprehension and arrest of the four defendants). The Court believes that the contemporaneous requirement of the exception is thus met. See United States v. Blakey, 607 F.2d 779, 786 (7th Cir. 1979)(holding statement made twenty-three minutes after event admissible as a present sense impression), overruled on other grounds by Idaho v. Wright, 497 U.S. 805 (1990); 4 Salzburg, Federal Rules of Evidence Manual at 803-14 - 803-16 (8th ed. 2002). Further, the Court believes that Mohammed's question may be fairly construed as describing the event in question -- the police's apprehension of the co-conspirators -- as required by 803(1). See Courtroom Manual at 272-73. Thus, even assuming that Mohammed's question constitutes hearsay, and even assuming that it does not meet the requirements of rule 804(3), it  meets the requirements of rule 803(1) and was admissible.

The Court does not, therefore, agree with Thomas that its evidentiary ruling was so clearly

erroneous under the rules of evidence that it can say with certainty the Tenth Circuit would reject the Court's ruling.

With regard to the applicability of Crawford v. Washington, the Court's extensive discussion above of that decision establishes that the Supreme Court intended to bring within its ruling those statements that constitute "testimonial statements." See United States v. Reyes, 362 F.3d 536, 540 n.4 (8th Cir. 2004)("Crawford did not provide additional protection for nontestimonial statements."). The Supreme Court did not define "testimonial statements," although it did give several examples, none of which clearly apply in this case. See Crawford v. Washington, 124 S.Ct. at 1364 (discussing examples such as formal affidavits or prior testimony under oath). The one example that Justice Scalia discussed which might, arguably, be applicable in this case is "[s]tatements taken by police officers in the course of interrogations[.]" Id. The Court does not believe, however, that Mohammed's question to the officers immediately after his apprehension and without prompting would fall under this category of statements. See Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004)(applying Crawford v. Washington; "Christian's statements do not qualify as testimonial. They were not ex-parte in-court testimony or its equivalent; were not contained in formalized documents such as affidavits, depositions, or prior testimony transcripts; and were not made as part of a confession resulting from custodial examination.") (emphasis added).

In Gutierrez v. Dorsey, No. 03-2127 (10th Cir. Cir., filed July 7, 2004), the Tenth Circuit rejected a Confrontation Clause challenge in a robbery case.

> Nontestimonial hearsay is at issue here. A witness, Juliette Hoffman, testified that her good friend, Rachel Martinez, told Ms. Hoffman that she had been with Mr. Gutierrez, had planned the robbery, and had driven to the service station where the robbery took place with Mr. Gutierrez and others. Ms. Martinez told Ms. Hoffman that she stayed in the car while Mr. Gutierrez went into the station and that he had a

knife. The trial court admitted that testimony under . . . 804(B)(4)(hearsay exception for statements against interest).

Order and Judgment at 5-6. If the statement in <u>Gutierrez v. Dorsey</u> is nontestimonial hearsay, it is not clear that Mohammed's question is testimonial hearsay.

It is not clear that <u>Crawford v. Washington</u> changes the law set forth in <u>United States v. Jackson</u>. It is also not clear that <u>Crawford v. Washington</u> would require a question to be treated as a "testimonial statement." While <u>Crawford v. Washington</u> certainly gives Thomas some new arguments against the admissibility of Mohamed's question, the case does not "clearly" require its exclusion.

The Court is not, therefore, convinced that <u>Crawford's</u> rule clearly applies to this case. In any case, the Court need not determine that issue, because it is not material to the holding that Thomas' motion is untimely. The Court raises this issue to point out that, even assuming it were inclined to adopt the "clearly erroneous" exception to rule 33 that Thomas advocates, the Court's ruling is not so clearly erroneous under the Federal Rules of Evidence or under <u>Crawford v. Washington</u> that the Court would find it appropriate to apply such an exception. The Court will, therefore, deny the motion.

**IT IS ORDERED** that Defendant Thomas' Motion and Memorandum of Law for a New Trial is denied and the jury verdict in this case is maintained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David C. Iglesias
  United States Attorney
    for the District of New Mexico
Presiliano Torrez
Amy Sirignano
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the United States of America*

Robert J. Gorence
Albuquerque, New Mexico

      *Attorney for Defendant Marvin Thomas*

Dennis Montoya
Albuquerque, New Mexico

      *Attorney for Defendant Gene Alan Summers*